FILED
United States Court of Appeals
Tenth Circuit

June 17, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENCH CIRCUIT

---

STACY PRICE; CHAD JAMES,
individually and as parents and next
friend, for the minor child, K.J.,

      Plaintiffs - Appellees,

    v.

DALE E. WOLFORD, D.O.,

      Defendant - Appellee,

OKLAHOMA HEALTH CARE
AUTHORITY,

      Defendant-Intervener -
Appellant.

No. 09-6139

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:07-CV-01076-M)

---

Ashley D. Williams (also known as Ashley Kemp), Deputy General Counsel,
(Howard J. Pallotta, Director of Legal Services, with her on the brief), Oklahoma
Health Care Authority, Oklahoma City, Oklahoma, for Defendant-Intervener -
Appellant.

Kenyatta R. Bethea (Dan L. Holloway and Marissa T. Osenbaugh with her on the
brief), Holloway, Bethea & Osenbaugh, Oklahoma City, Oklahoma, for Stacy
Price, Chad James and K.J., Plaintiffs - Appellees.

Spencer B. Housley (John Wiggins with him on the brief), Wiggins Sewell &
Ogletree, Oklahoma City, Oklahoma, for Dale Wolford, D.O., Defendant -
Appellee.

Before **BRISCOE**, Chief Judge, **HENRY** and **HARTZ**, Circuit Judges.

**HARTZ**, Circuit Judge.

The Oklahoma Health Care Authority (OHCA) asserted a $544,282.26 Medicaid lien on a $1.1 million settlement of Plaintiffs' malpractice suit against Dr. Dale Wolford. The district court, however, allotted OHCA only $67,666.67 in full satisfaction of the lien. OHCA appeals, contending (1) that the district court lost jurisdiction of the malpractice litigation when OHCA's intervention as a defendant destroyed diversity of citizenship; (2) that the district court erred in not conducting an evidentiary hearing at which OHCA could challenge the reduction of its lien; and (3) that the district court did not comply with Oklahoma law when it reduced OHCA's lien. We reject the jurisdictional argument because the supplemental-jurisdiction statute, 28 U.S.C. § 1367, permitted the joinder of OHCA as a nondiverse defendant. We reject OHCA's second contention because it did not timely request an evidentiary hearing. As for its final contention, we hold that the district court correctly construed Oklahoma law but erred in finding that the settling parties had proved by clear and convincing evidence that only $67,666.67 of the settlement could be attributed to medical care paid by Medicaid. We therefore reverse and remand for further proceedings.

## I.  BACKGROUND

On May 21, 2004, plaintiff Stacy Price gave birth to her daughter, K.J., at Grady Memorial Hospital in Chickasha, Oklahoma.  The father is plaintiff Chad James.  K.J. was born with severe brain damage and other disabilities, which have required and will continue to require significant medical care.  Ms. Price, on behalf of K.J., applied for and received Medicaid benefits.  As a condition of receiving benefits, she assigned to OHCA—the Medicaid agency for Oklahoma—the right to receive any payments from a third party for K.J.'s medical care.  *See* 42 U.S.C. § 1396k(a)(1)(A) (states must require Medicaid recipients to assign such rights).  In addition, Oklahoma law places a statutory lien on such payments.  *See* Okla. Stat. tit. 63, § 5051.1(D) (2009).

On September 25, 2007, Ms. Price and Mr. James, individually and as next friends of K.J., sued Dr. Wolford, who had delivered K.J., for alleged negligence during labor and delivery.  The United States District Court for the Western District of Oklahoma had jurisdiction under 28 U.S.C. § 1332 because Plaintiffs were residents of Oklahoma and Dr. Wolford was a resident of Maryland.  Plaintiffs claimed damages for medical expenses and loss of consortium with their daughter.  Their expert, Lon Huff, estimated the lifetime cost of K.J.'s care at just over $12 million.  Dr. Wolford moved to limit or exclude Mr. Huff's testimony as unreliable, but the district court denied the motion after a hearing to determine whether the testimony satisfied the requirements of *Daubert v. Merrell Dow*

-3-

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). During a settlement conference on June 30, 2008, the parties agreed to settle for $1.1 million; counsel for OHCA was present and did not object to the settlement total. As of June 22, 2008, OHCA had paid $544,282.26 of K.J.'s medical expenses.

On July 24 Plaintiffs and Dr. Wolford filed a joint motion asking the district court to approve the settlement. The motion, which was served on OHCA, attached a proposed order allocating $37,666.67 to OHCA in full satisfaction of its lien. On August 6 the court held a "friendly suit" hearing attended by attorneys for Plaintiffs, Dr. Wolford, and OHCA. The court was informed that the case had settled for $1.1 million, of which $30,000 was to go to Mr. James for the expenses he had incurred in caring for K.J., and $37,666.67 was to go to OHCA. OHCA objected to the allocation. In response, Plaintiffs' attorney pointed to Mr. Huff's $12 million estimate of the cost of K.J.'s lifetime care and contended that "Medicaid is only entitled to its proportionate share of the settlement proceeds versus what the overall damages were that could have been claimed in the case." Aplt. App. at 142. OHCA's attorney responded that Plaintiffs had provided OHCA with no information regarding the asserted $12 million value of their claim.

Upon a suggestion by Plaintiffs' attorney, the court invited briefing, and OHCA's attorney requested permission to file a motion to intervene so that she could file a brief. The court granted the request and deferred its decision on the

settlement pending full briefing by the parties on the allocation to OHCA. OHCA filed its motion to intervene and supporting brief on August 15, attaching a proposed answer and counterclaim. The motion and brief argued against the proposed lien payment of $37,666.67, but did not request an evidentiary hearing to present additional evidence. The proposed answer stated the cost of K.J.'s care, and the counterclaim asserted OHCA's entitlement to recover $544,282.26 from the settlement proceeds. OHCA also submitted a brief on legal issues regarding Medicaid liens. Addressing the proposed settlement allocation, the brief noted that "no evidence has been submitted regarding Plaintiffs' valuation of their case[;] the OHCA has certainly not stipulated to any valuation other than the amount Plaintiffs determined was appropriate to settle K.J.'s claims for." *Id.* at 74.

The district court granted OHCA's motion to intervene, but gave little relief. Finding that Plaintiffs and Dr. Wolford had proved the propriety of their proposed allocation by clear and convincing evidence, as required by Oklahoma law, *see* Okla. Stat. tit. 63, § 5051.1(D)(1)(d), it ordered that OHCA be paid $67,666.67 in full satisfaction of its lien. It agreed with Plaintiffs and Dr. Wolford that the ratio of the $37,666.66 set aside for OHCA's lien to the total lien of $544,288.26 is roughly equal to the ratio of the $1.1 million settlement amount to Plaintiffs' damages (including K.J.'s lifetime expenses of $12 million);

but it then redirected to OHCA the $30,000 that the settlement agreement had allocated to Mr. James for K.J.'s medical expenses.

On November 6, 2008, OHCA filed a motion under Fed. R. Civ. P. 59 asking the district court to modify its judgment or dismiss the action on the ground that OHCA's intervention destroyed diversity. The court denied the motion and OHCA appealed. It asserts (1) that its intervention destroyed diversity because it is not a citizen of a state, (2) that it was entitled to an evidentiary hearing on the propriety of the settlement allocation, and (3) that Oklahoma law requires that it be paid its full lien amount from the settlement proceeds because Plaintiffs have not proved the propriety of their allocation of those proceeds.

## II.     DISCUSSION

### A.     Jurisdiction

We first address whether the district court had jurisdiction over this case after OHCA intervened. In general, our review of a question of subject-matter jurisdiction is de novo, *see King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1158 (10th Cir. 1990), although we review for clear error any district-court findings of fact relevant to the question, *see Aves ex rel. Aves v. Shah*, 997 F.2d 762, 766 (10th Cir. 1993).

OHCA claims that its intervention destroyed the requirement of complete diversity, *see Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005), because it is an

alter ego of the State of Oklahoma and diversity suits must be between citizens of different states rather than between a state and a citizen of another state, *see State Highway Comm'n of Wyo. v. Utah Constr. Co.*, 278 U.S. 194, 199–200 (1929); *Texas Dept. of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 926 (5th Cir. 1995) ("In an action where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for purposes of diversity jurisdiction."). Although we agree that if OHCA had been a named defendant when suit was brought, the federal court would not have had diversity jurisdiction (assuming, as we do, that OHCA is an alter ego of the state), we do not agree that OHCA's intervention destroyed jurisdiction.

Ordinarily, "the jurisdiction of the Court depends upon the state of things at the time of the action brought, and . . . after vesting, it cannot be ousted by subsequent events." *Mullan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824); *accord Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570–71 (2004). There is no dispute that the district court had diversity jurisdiction over the original suit between Plaintiffs and Dr. Wolford. Plaintiffs properly alleged an amount in controversy greater than $75,000, and the adverse parties were citizens of different states, with Plaintiffs residing in Oklahoma and Dr. Wolford residing in Maryland. *See* 28 U.S.C. § 1332.

Once a district court has jurisdiction, additional claims and parties can be added under the supplemental-jurisdiction statute, 28 U.S.C. § 1367(a), which

grants the district courts jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[1]  A

[1]28 U.S.C. § 1367 states in pertinent part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(continued...)

-8-

claim is part of the same case or controversy if it "'derive[s] from a common nucleus of operative fact.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Here, there is no question that OHCA's claim for a share of the settlement proceeds arises out of the same facts as the underlying tort claim. And § 1367(a) explicitly states that "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

Although § 1367(b) sets forth exceptions to supplemental jurisdiction, they are not applicable here. The exceptions relating to intervention under Fed. R. Civ. P. Rule 24 preclude supplemental jurisdiction over (1) claims by parties "seeking to intervene as plaintiffs under Rule 24" and (2) "claims by plaintiffs against persons made parties under Rule . . . 24," if "exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b). Neither exception applies here because OHCA intervened as a defendant, not a plaintiff, and Plaintiffs assert no claims against it. *See generally Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) (discussing § 1367); *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 160 (3d Cir. 1995) ("The plain language of § 1367(b) limits supplemental jurisdiction over claims of *plaintiffs* against

---

[1](...continued)
        (4) in exceptional circumstances, there are other compelling
        reasons for declining jurisdiction.

persons made parties under Rule . . . 24, and of parties who join or intervene as *plaintiffs* pursuant to Rule . . . 24. The section has little to say about defendants." (citation and internal quotation marks omitted)); Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute—A Constitutional and Statutory Analysis*, 24 Ariz. St. L.J. 849, 857 (1992) ("[T]he statute exempts defendants from the restrictions of § 1367(b) and thus fully preserves supplemental jurisdiction for claims asserted by defendants in all actions, whether founded on federal question, diversity of citizenship, or any other jurisdictional basis."); 13D Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 3567.2, at 375–76 ("§ 1367(b) plays no role in claims, such as counterclaims and crossclaims, asserted by defendants or third-party defendants. . . . Moreover, it is clear that a defendant or third-party defendant does not become a 'plaintiff' for purposes of § 1367(b) by asserting a claim.").

We must note, however, a qualification to our conclusion that because of OHCA's status as a defendant, § 1367(b) does not foreclose jurisdiction. Although OHCA moved to intervene as a defendant, courts are not bound by the way in which the parties seek to align themselves. Hence, we might be required to reject supplemental jurisdiction based on an exception under § 1367(b) if we had to realign OHCA as a plaintiff. We therefore explore that possibility.

The leading case on realignment is *City of Indianapolis v. Chase Nat. Bank of New York*, 314 U.S. 63 (1941). In that case a citizen of New York brought suit

against three citizens of Indiana. But the Supreme Court ruled that the requisite diversity was lacking because one of the defendants should have been aligned as a plaintiff. The four parties were: Chase National Bank (Chase), a New York corporation; Indianapolis Gas Company (Indianapolis Gas) and Citizens Gas Company (Citizens), both Indiana corporations; and the City of Indianapolis (the City). *See id.* at 68. Indianapolis Gas was the City's incumbent gas company. Citizens was formed to compete with it, but Citizen's franchise provided that 25 years after formation, the company would be wound up and its property conveyed to the City "subject to the company's outstanding legal obligations." *Id.* at 70 (internal quotation marks omitted). Before the 25 years elapsed, Indianapolis Gas leased all its gas-plant property to Citizens for a 99-year term. As part of the agreement, Citizens was to pay the interest on Indianapolis Gas's bonds. Chase was the trustee under a mortgage deed from Indianapolis Gas that secured the bonds. When the franchise expired, Citizens conveyed its property to the City, but the City refused to be bound by the terms of the 99-year lease from Indianapolis Gas. *See id.* Because the City would not pay interest on the Indianapolis Gas bonds, Chase sued the three defendants, asking that the court declare the lease a valid obligation of the City and that the interest due be paid by the parties "liable therefor." *Id.* at 71 (internal quotation marks omitted). Citizens and the City contended that the lease was not valid; but Indianapolis Gas agreed with Chase. *See id.* Although the Court acknowledged that the complaint

alleged liability of Indianapolis Gas on the bonds, it said that this liability "was not really in issue, and by its answer, Indianapolis Gas took it out of the case." *Id.* at 73 n.3. Thus, the only question presented by the litigation was whether the lease bound the City, and "Chase and Indianapolis Gas have always been united on this issue," *id.* at 73. The Supreme Court therefore ruled that the parties must be realigned so that those two parties were placed on the same side. *See id.* at 72–74. Because an Indiana citizen was then on each side, the district court lacked diversity jurisdiction to hear the matter. *Id.* at 74–75.

The federal courts of appeals are divided on how to interpret *City of Indianapolis*, some applying the "primary-purpose test" and others the "substantial-conflict test" (or its cousin, the "collision of interests" test) to determine when a party must be realigned. *See* 15 James W. Moore et al., Moore's Federal Practice §§ 102.20[3]–[5] (3d ed. 1997). Under the primary-purpose test, "the parties must be realigned if there is no adversity with regard to the primary issue in dispute." *Id.* at 102-49; *cf. City of Indianapolis*, 314 U.S. at 69 (alignment "must be ascertained from the principal purpose of the suit" (internal quotation marks omitted)). Under the substantial-conflict test, a party need not be realigned so long as it has an "actual and substantial conflict" with a party on the other side. Moore et al., *supra*, § 102.20[4]; *cf. City of Indianapolis*, 314 U.S. at 69 ("To sustain diversity jurisdiction there must exist an actual,

-12-

substantial, controversy between citizens of different states" (citations and internal quotation marks omitted)).

The primary-purpose test might be difficult to apply in this case because the primary purpose arguably changed between the time that the Plaintiffs filed suit (when the core issue was Dr. Wolford's liability) and the time that OHCA intervened (when the core issue was the amount of OHCA's lien). But that problem need not concern us because this circuit uses the substantial-conflict test. We adopted that test in *Farmers Alliance Mutual Insurance Co. v. Jones*, 570 F.2d 1384 (10th Cir. 1978). *See* 15 Moore et al., *supra*, § 102.20[4] & n.21 (including this circuit as one that has adopted the substantial-conflict test). E.L. Shippey was killed while driving a car. His three passengers, Melissa Spann, Alan Jones, and Craig Lee McCracken, were injured. *See id.* The car was owned by Spann Chevrolet and insured under a policy issued by Farmers. Farmers assumed liability only for accidents in which the driver received proper permission to drive the car. After Jones and McCracken brought negligence actions against Shippey's estate in state court, Farmers filed in federal court a diversity action seeking a declaratory judgment that it was not liable on its policy because Shippey did not have permission to drive the car. The defendants were Spann Chevrolet, Orval Spann (a vice president of Spann Chevrolet), Melissa Spann, Shippey's estate, Jones, and McCracken. The district court found that Shippey was not a covered driver and ruled that Farmers was not liable. Jones

-13-

and McCracken appealed, arguing that the district court had lacked jurisdiction to hear the case because there had been no adversity between plaintiff Farmers and defendants Orval Spann and Spann Chevrolet, who should have been realigned as plaintiffs, which would destroy diversity. *See id.* at 1385–86. We disagreed. Although Jones and McCracken were correct that Mr. Spann and Spann Chevrolet shared Farmers' view that it was not liable to Jones and McCracken, the interests of Farmers diverged from those of Mr. Spann and Spann Chevrolet in that the latter contended that Farmers owed duties to defend them and to provide coverage in the event of an adverse verdict. *See id.* at 1387–88. We made no attempt in *Farmers Alliance* to determine the primary purpose of the litigation. It was enough that the oppositely aligned parties had substantial adverse interests.

In this case there is a substantial conflict between OHCA and Plaintiffs. Any sum going to OHCA is taken from Plaintiffs' recovery. Therefore, we cannot realign OHCA as a plaintiff, and the district court had jurisdiction over the entire suit after OHCA's intervention.

## B. Merits

After the district court entered its order approving the settlement and allocating $67,666.67 of the proceeds to OHCA in full satisfaction of its lien, OHCA filed a motion to reconsider under Fed. R. Civ. P. 59. In addition to raising the jurisdictional argument that we have rejected, it argued (1) that OHCA had been improperly denied the opportunity to engage in discovery and present

-14-

evidence; and (2) that the district court's order did not properly apply Oklahoma law in determining OHCA's share of the settlement proceeds. The court denied the motion. OHCA appeals the denial, raising the same arguments against the court's allocation decision. We review the denial of a Rule 59 motion for abuse of discretion. *See Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997).

### 1.  Denial of Evidentiary Hearing

OHCA argued in its Rule 59 motion that because its intervention made it a "full participant" in the lawsuit, Aplt. App. at 89, it was automatically entitled to present and challenge evidence. The district court denied the motion on the ground that OHCA had sought to intervene solely to file a brief objecting to the settlement, and not to "conduct discovery and try the issues it was raising in opposition to the settlement." *Id.* at 112. The record supports the district court's denial.

At the hearing on the motion to approve the settlement, at which counsel for OHCA was present (although OHCA was not yet a party), Plaintiffs' counsel argued that the allocation to OHCA was appropriate. Counsel relied on the ratio of the settlement amount to the total damages suffered by Plaintiffs, pointing in particular to their expert's opinion regarding the cost of K.J.'s lifetime care. OHCA asked for permission to intervene so that it could file a brief in opposition, and the district court granted leave to file a motion to intervene. In response to a question from Plaintiffs' counsel, the court was noncommittal about whether it

would hear oral argument or conduct another friendly-suit hearing after reviewing the briefs. Yet neither at that hearing nor in its later pleadings before the court ruled did OHCA express any desire to conduct discovery, put on witnesses, or cross-examine witnesses of the other parties. The court would have had no reason to believe that OHCA wanted an evidentiary hearing. We agree with OHCA that the authorities it cites suggest that it would have had the right to an evidentiary hearing if it had requested one. But absent such a request, the district court committed no error by ruling after receiving the briefs. *See United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009) (en banc) (party desiring to supplement its filings with an evidentiary hearing bears the burden of requesting one); *see also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 94 (1st Cir. 1990) ("[I]t rests with the proponent of an evidentiary hearing to persuade the court that one is desirable and to offer reasons warranting it."). A party must make its arguments before the court rules. It cannot keep an arrow in its quiver in reserve, for use in case the judge says at the end of the contest that all the expended arrows missed the mark. The request for an evidentiary hearing in OHCA's Rule 59 motion was thus untimely, and the district court's denial of the request was not an abuse of discretion.

### 2.    Propriety of Allocation

OHCA also argued in its motion for reconsideration that the district court had erred in approving the allocation to OHCA from the settlement proceeds

because the allocation did not comply with Oklahoma law. In large part we disagree. The district court recognized the correct legal standard to apply in assessing the propriety of the proposed reduction in OHCA's recovery. Nevertheless, we must reverse because of its error in applying that standard.

Oklahoma amended its Medicaid-recovery statute in 2007 after the United States Supreme Court held that a state's recovery of Medicaid payments out of a tort settlement is limited to the portion of the settlement that represents medical costs paid by Medicaid. *See Ark. Dept. of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 282–84 (2006). The relevant part of the present statute, whose applicability in this case was conceded by OHCA in its opening brief,[2] states:

> D. If the injured or diseased person asserts or maintains a claim against another person or tortfeasor on account of the injury or disease, [OHCA]:
>
> 1. Shall have a lien upon payment of the medical assistance to the extent of the amount so paid upon that part going or belonging to the injured or diseased person of any recovery or sum had or collected or to be collected by the injured or diseased person up to the amount of the damages for the total medical expenses, or by the heirs, personal representative or next of kin in case of the death of the person, whether by judgment or by settlement or compromise. The lien authorized by this subsection shall:
>
> . . . .

---

[2]OHCA changed course in its reply brief to argue that the amended statute does not apply because the amendment to the statute was passed after the events in question took place. But "[t]his court does not ordinarily review issues raised for the first time in a reply brief," *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000), and we decline to do so here.

> d. be applied and considered valid as to the entire settlement, after the claim of the attorney or attorneys for fees and costs, *unless a more limited allocation of damages to medical expenses is shown by clear and convincing evidence*.

Okla. Stat. tit. 63, § 5051.1(D)(1)(d) (emphasis added). OHCA cites Oklahoma case law that predates the statute, but those opinions are irrelevant and unpersuasive.

Thus, the issue before the district court was simply whether the settling parties had presented clear and convincing evidence that the portion of the $1.1 million settlement attributed to K.J.'s expenses paid by Medicaid was no more than $67,666.67. The court ruled that they had, stating that "plaintiffs and defendant have shown the allocation of damages set forth in the settlement agreement by clear and convincing evidence." Aplt. App. at 81. We disagree.

We need not struggle to determine whether the evidence supporting the reduction in OHCA's recovery was clear and convincing, because at the hearing to determine whether the district court would approve the settlement, there was no evidence whatsoever relating to the reduction. Aside from a reduction necessary to compensate counsel, a reduction in a Medicaid lien can be justified only by showing a reason why the plaintiff would agree to allow the defendant to pay less than the full amount of the Medicaid lien. The usual reasons would be that the liability of the settling defendant is uncertain or that the defendant lacks the money to pay for his full liability (or both); so the plaintiff would be willing to

-18-

take a proportionate reduction in each component of the damages that she would expect the jury to award if the defendant were found liable. For example, if the settlement is for 50% of what the jury is likely to award because there is only a 50% chance that the jury will find liability, the Medicaid lien could properly be cut in half. Or if liability is clear and the expected verdict would be $2 million, but the defendant can pay only $1 million, a 50% reduction would also be in order. A further reduction might also be appropriate if there are doubts about whether the jury would award as damages all the medical expenses paid by Medicaid—because, for example, one could question whether the expenses were caused by the negligent acts of the defendant—although generally one can be more confident of recovering those expenses in full than in recovering, say, the full claim for pain and suffering. Yet neither Plaintiffs nor Dr. Wolford presented evidence to show how the settlement amount was computed. In particular, there was no evidence of the probability of finding Dr. Wolford liable or the expected damages award if he were found liable.

True, after OHCA's attorney objected to the reduction of the lien, the response by Plaintiffs' attorney included the statement that "Mr. Lon Huff . . . estimated that [K.J.'s] future medical care was going to be somewhere around $12 million." *Id.* at 141. But he neither offered into evidence any statement or report by Mr. Huff, nor advised that any such statement or report was already in the district-court record. Accordingly, counsel for OHCA could accurately assert

-19-

later at the hearing that it had "not received any information from plaintiff in regards to their attested 12 million value of their case," *id.* at 145, and could repeat in its posthearing brief on Medicaid lien law that Plaintiffs had presented no evidence regarding their valuation of their case.

On appeal Plaintiffs argue that the $12 million figure is supported by a report prepared by Mr. Huff that had been presented to the district court for the *Daubert* hearing. But at the friendly-suit hearing Plaintiffs did not even state that such information was in the district-court record, much less ask that it be admitted into evidence. Nothing in the record indicates that OHCA knew of the report (or of Mr. Huff's deposition) at the time of the hearing. And we cannot accept Plaintiffs' suggestion that OHCA was bound by everything in the preintervention district-court record when its sole interest was the new issue of the proper allocation of the settlement proceeds.

In short, we cannot affirm a finding that there was clear and convincing evidence to support a claim when nothing relevant was offered into evidence during the proceeding to resolve the claim. *See Edwards v. Ardent Health Servs., L.L.C.*, No. 106,291 (Okla. Civ. App. May 7, 2010). The error is not just a technicality. An opposing party can hardly challenge evidence without knowing what the evidence is. And a review of the report—which the appellees have included in their supplemental appendices on appeal, and which has now been addressed by the parties—shows that it could be vulnerable to nontrivial

-20-

challenges. At oral argument Plaintiffs' attorney conceded that the $12 million figure had not been discounted to present value. And more importantly, Mr. Huff's calculations assumed that K.J. had a life expectancy of 80.4 years, but the assumption was based solely on an official table providing the life expectancy for a three-year old, without making any adjustment for K.J.'s severe disabilities. Thus, the report in itself hardly establishes that a jury would award $12 million for the cost of K.J.'s lifetime care if it found Dr. Wolford liable. (We note as an aside that OHCA's failure to request an evidentiary hearing in district court until after the court had ruled might be attributed to a justifiable belief that it would be entitled to recover all the Medicaid expenditures unless Plaintiffs put on evidence (indeed, clear and convincing evidence) to support a reduction of the recovery. Because Plaintiffs had thus far not put on any evidence, the absence of an evidentiary hearing could only help OHCA.)

Accordingly, we hold that the district court abused its discretion in denying OHCA's motion for reconsideration. Appellees had not presented the court with evidence necessary to sustain the reduction in OHCA's lien.

## III.  CONCLUSION

We REVERSE the decision of the district court and REMAND for further proceedings on the allocation of the proceeds of the $1.1 million settlement. We leave to the district court in the first instance to decide whether an evidentiary hearing should be conducted.