Avilon Auto. Group v Leontiev (2019 NY Slip Op 00058)





Avilon Auto. Group v Leontiev


2019 NY Slip Op 00058


Decided on January 3, 2019


Appellate Division, First Department


Moulton, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 3, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

John W. Sweeny, Jr.,J.P.
Troy K. Webber
Ellen Gesmer
Anil C. Singh
 Peter H. Moulton, JJ.


656007/16 6632 

[*1]Avilon Automotive Group, et al., Plaintiffs-Appellants,
v
Sergey Leontiev, et al., Defendants-Respondents, Leonid Leontiev, et al., Defendants.



Plaintiff appeals from the order of the Supreme Court, New York County (Barry R. Ostrager, J.), entered October 5, 2017, which dismissed the action in its entirety with prejudice.




Debevoise & Plimpton LLP, New York (Sean Hecker, William H. Taft V, Nathan S. Richards and Megan Corrarino of counsel), for appellants.
Gibson, Dunn & Crutcher LLP, New York (Robert L. Weigel, Alison L. Wollin and Marshall R. King of counsel), for Sergey Leontiev, respondent.
Kobre & Kim LLP, New York (Andrew C. Lourie, Lindsey Weiss Harris and Carrie A. Tendler of counsel), for Wonderworks Investments Limited, respondent.



MOULTON, J.


Plaintiffs Avilon Automotive Group (Avilon), a Russian Corporation, and Karen Avagumyan (Avagumyan), a Russian national and the son of one of Avilon's principals, bring this action to recover loans to companies allegedly controlled, and looted, by defendant Sergey Leontiev (Leontiev). The remaining defendants are alleged to have assisted Leontiev in a scheme [*2]to fraudulently convey the loan proceeds to accounts controlled by Leontiev in the Cook Islands.
Supreme Court dismissed the action based on res judicata, finding that a federal action brought by Leontiev in the Southern District of New York (Leontiev v Varshavsky, US Dist Ct, SD NY, 16 Civ 03595, Rakoff, J., 2016) (the federal action) precludes the claims brought herein. We now reverse and remand for the reasons stated below.
Background
The amended complaint herein avers that in 2008 Avilon lent approximately $19.9 million to nonparty Ambika Investments Limited (Ambika), a Cyprus entity with a registered address in that country. In 2011 Avilon made another loan to Ambika of approximately $6.625 million.
Avagumyan is the son of Kamo Avagumyan, a 45% owner of Avilon. The amended complaint alleges that between August 2014 and March 2015, nonparty ZAO Financial Group Life (FG Life), a Russian entity with a registered address in Moscow, issued approximately $21.2 worth of promissory notes to Avagumyan. In 2015 nonparty Venop Trading Limited (Venop), a Cyprus entity with a registered address in that country, issued approximately $4.75 million in promissory notes to Avagumyan. There was some discovery in the federal action that indicated that Avagyuman was merely the nominal owner of the notes from FG Life and Venop, and that his father actually put up the money and received the interest associated with the notes.
Plaintiffs allege that Ambika, FG Life and Venop are shell companies that are owned and controlled by Leontiev and nonparty Alexander Zheleznyak. Leontiev did not sign any of the loan documents discussed above, and is not a named party in them, but plaintiffs herein assert he is responsible for the loans because he misappropriated and currently controls the loan proceeds.
In August 2015 Probusiness Bank, a Russian commercial bank and allegedly the pillar of Leontiev and Zheleznyak's financial empire, came under the scrutiny of the Russian Central Bank, and eventually was placed in receivership. These developments caused Avilon's president, nonparty Alexander Varshavsky, to seek assurances from Leontiev on behalf of the creditors that the notes would be repaid. At meetings in Moscow and London in August 2015 Leontiev allegedly promised to repay the loans. In September 2015 Leontiev did pay back approximately $17 million of the money allegedly owed Avilon, but plaintiffs allege that as of August 2016 there remained outstanding balances owed to Avilon of approximately $29.6 million and owed to Avagumyan of approximately $28 million.
Plaintiffs allege that instead of repaying these outstanding balances, Leontiev, with the assistance of the other defendants, transferred assets to defendant Legion Trust, a Cook Islands Trust, allegedly to place these assets out of the reach of plaintiffs and other creditors. To date Leontiev has not made any further repayments to plaintiffs. In the federal action, and herein, Leontiev has maintained that he is not personally responsible on the notes.
In May 2016 Leontiev sued Varshavsky, and only Varshavsky, in the Southern District of New York. A summary of the federal action is necessary in order to determine its preclusive effect on the instant litigation.
Leontiev contends that he brought the federal action in response to Varshavsky's relentless demands that he personally repay the loans. To that end, in his amended complaint in the federal action Leontiev sought a declaration that "he owes no debt to Mr. Varshavsky, or to anyone acting in concert with him, relating to the Alleged Loans." Leontiev also sought an injunction preventing Varshavsky "or anyone acting in concert or participation with [him], from taking any further steps to enforce these debts against Mr. Leontiev in his personal capacity, including, but not limited to, . . . pursuing litigation." While the sole named defendant was Varshavsky, Leontiev's complaint in the federal action attached appendices listing the actual creditors to various notes, including Avilon and Avagumyan. As the amended complaint acknowledged, the loans listed in the appendices allegedly concerned "obligations owed by [*3]various non-parties - none of whom are Mr. Leontiev - to various other non-parties - none of whom are Mr. Varshavsky." Federal jurisdiction was based on the parties' diversity. Leontiev and Varshavsky agreed that the former is a Russian national who resides in New York [FN1] and that the latter is a naturalized US citizen who resides in New Jersey.
In his answer in the federal action, Varshavsky averred that his status as Avilon's president gave him authority to negotiate "on behalf of" Avilon for payment of the loans. It is clear that Varshavsky was not himself a party to the notes and loan documents. However, during the course of the federal litigation Varshavsky did assert, or at least did not deny, that he somehow had, or could obtain, standing to enforce the notes. For example, his answer denied Leontiev's allegation that "Leontiev owns Mr. Varshavsky nothing." Additionally, while he did not assert any counterclaims against Leontiev, Varshavsky asked, as a request for relief in his answer, that the Court determine "on the merits that [Leontiev] is personally liable for the debts in question and on that basis deny his claim for declaratory judgment."
Judge Rakoff, who presided over the federal action, noted at several junctures that Varshavsky appeared to argue that he had standing to collect on the notes. Judge Rakoff denied Leontiev's motion on the pleadings, noting that "the pleadings do not foreclose the possibility that Varshavsky can enforce the loans in his personal capacity, such as through assignments" (Leontiev v Varshavsky, US Dist Ct, SD NY, 16 Civ 03595, at 18, Rakoff, J., Dec. 4, 2016). Accordingly, Judge Rakoff allowed Varshavsky extensive discovery concerning Leontiev's alleged alter ego liability for the debts of Ambika, FG Life and Venop, and Leontiev's alleged use of various shell companies to safely funnel the loan proceeds to the Cook Islands. Defendants herein argue that this discovery was wholly unnecessary as Leontiev, at oral argument on his motion for judgment on the pleadings, limited his prayer for declaratory relief to a declaration that he was not indebted to Varshavsky in the latter's personal capacity.[FN2]
Leontiev sought discovery concerning Varshavsky's authority to collect on the loans. Kamo Avagumyan (as noted, Avagumyan's father) was deposed by Leontiev's lawyers and testified that he verbally authorized Varshavsky to collect on the promissory notes nominally owned by his son. However, at his own deposition, Varshavsky admitted that he had no assignments from the actual creditors on the notes, and that he personally was not owed any money by Leontiev. Leontiev thereupon moved for summary judgment, citing Varshavsky's admission at his deposition. In his motion papers Leontiev also argued that he had no personal obligation under the relevant loan documents to anyone. "Even if Mr. Varshavsky had rights with regard to the Alleged Loans - he does not - Mr. Leontiev is entitled to a declaratory judgment for a second, independent reason: Mr. Leontiev is not personally liable for those debts."
In his opposition papers Varshavsky admitted that Leontiev did not owe him any money in his personal capacity. At oral argument on the motion, Judge Rakoff noted that the parties could have agreed "weeks or months ago" that Leontiev in his personal capacity owed nothing to Varshavsky. In a final judgment dated March 1, 2017, the court granted summary judgment in Leontiev's favor on the parties' consent and declared that "Sergey Leontiev owes no debt or [*4]obligation to Alexander Varshavsky in [Varshavsky's] personal capacity with respect to the loans and other debt instruments described in paragraph 32 of the complaint in this case."
The Clerk of the Southern District levied costs in the amount of $19,975.85 against Varshavsky, who thereupon sought relief from Judge Rakoff. In denying Varshavsky's application, Judge Rakoff noted that "Varshavsky's current protests to the contrary, throughout most of the case Varshavsky suggested to the Court that he might be owed money from Leontiev in his (Varshavsky's) personal capacity" (Leontiev v Varshavsky, US Dist Ct, SD NY, 16 Civ 03595, at 3, Rakoff, J., May 1, 2017). Therefore the court found that Leontiev was the prevailing party, as the declaration in his favor "stymies any efforts by Varshavsky to collect on the loans in his own name, and makes plain that any further debt collection efforts must be in a purely representative capacity" (id.).
Plaintiffs brought the instant action in Supreme Court, New York County in November 2016, before the federal action was dismissed. Plaintiffs are represented by the same firm that defended Varshavsky in the federal action and Leontiev is represented by the same firm that represented him in the federal action. The allegations in the initial complaint concern the Ambika, FG Life and Venop loan transactions. The complaint alleges that Leontiev used his domination of the three companies, and other entities, to gain possession of the loan proceeds. The complaint also asserted that defendants Wonderworks, Legion Trust and Southpac Trust International all were unjustly enriched by enabling Leontiev's scheme to steal the loan principal and avoid repayment. An amended complaint, filed in December 2016, added defendant Leonid Leontiev, Sergey Leontiev's father. On February 22, 2017, plaintiffs moved for leave to file a second amended complaint. At oral argument on the motion to amend, Supreme Court deferred decision on the motion, and stayed discovery, pending any motions on forum non conveniens or "jurisdiction" by defendants.
Defendants Leontiev and Wonderworks duly moved to dismiss, asserting, among other arguments, that plaintiffs' claims herein are barred by res judicata. None of the other defendants moved.
In a decision dated October 5, 2017, Supreme Court dismissed the action with prejudice on claim preclusion grounds, and denied the motion to amend as moot. The court found that plaintiffs herein should have intervened in the federal action, or assigned their claims to Varshavsky. The failure to do so was a "blatant misuse of the federal forum," which resulted in a "stunning" amount of discovery, and several motions, which Supreme Court found were wasted because plaintiffs herein failed to use the federal forum to resolve all "claims aris[ing] from a common nucleus of operative facts." Supreme Court noted that the same counsel were arrayed against each other in the federal action and that plaintiffs therefore had to be aware that Varshavsky had taken the position in the federal action that he had authority to act on their behalf. Supreme Court concluded that plaintiffs were thus seeking nothing more than a "do-over" of the federal action and a "second bite at the apple."
Discussion
The doctrine of claim preclusion does not bar plaintiffs' claims herein. Varshavsky, the sole defendant in the federal action, was not himself the creditor of the subject loans and had no standing to assert a counterclaim for recovery of plaintiffs' loans in that action. Plaintiffs' putative rights to intervene as party defendants in the federal action, or to assign their claims to Varshavsky, are far from clear. Either option, intervention or assignment, might have been rejected by the federal court as an attempt to evade the strictures of diversity jurisdiction. Apart from the efficacy of these options, even if intervention or assignment were possible, there is no legal doctrine that would compel plaintiffs herein to litigate in the federal action. In short, plaintiffs herein, as nonparties to the federal litigation, are not precluded from asserting claims that no party in the federal litigation had standing to pursue. To hold otherwise would mean that [*5]a debtor may, by suing a creditor's principal or associate, require the creditor to participate in the action or have its claims precluded.
Claim preclusion, or res judicata, "bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was" (Matter of People v Applied Card Sys., Inc., 11 NY3d 105, 122 [2008], cert denied 555 US 1136 [2009] [internal quotation marks and citation omitted]). Claim preclusion "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation" (Matter of Hunter, 4 NY3d 260, 269 [2005]).
Defendants' argument on claim preclusion is twofold.
First, they argue that Varshavsky's status as Avilon's president and Avagumyan's representative means that plaintiffs' interests were represented in the federal action. This argument rests on the factual predicate that Varshavsky was in privity with plaintiffs. However, the Court of Appeals has cautioned that privity is an "amorphous" concept (Beuchel v Bain, 97 NY2d 295, 304 [2001] [internal quotation marks omitted]), that "does not have a technical and well-defined meaning" (Watts v Swiss Bank Corp., 27 NY2d 270, 277 [1970]). Relationship alone is not sufficient to support preclusion. "Ultimately, we must determine whether the severe consequences of preclusion flowing from a finding of privity strike a fair result under the circumstances" (Applied Card Sys., Inc., 11 NY3d at 123).
Neither Varshavsky's position as president of Avilon, nor his status as designated negotiator for Kamo Avagumyan, gave him standing to assert a claim in court for return of the outstanding loans. Therefore it is not a "fair result" to preclude plaintiffs from raising claims herein that Varshavsky had no standing to assert in the federal action. To be sure in the federal action Varshavsky asserted, as a defense, that Leontiev was personally responsible for the loans, and extensive discovery was taken on that topic. But that broad defense came in response to Leontiev's equally broad prayer for declaratory relief that "owe[d] [no] debt or obligation to Mr. Varshavsky, or anyone acting in concert or participation with [him], relating to the Alleged Loans" (emphasis added). Though Leontiev appeared to narrow his prayer as the litigation progressed, he continued to hedge his bets until the very end. Leontiev's summary judgment motion, though primarily based upon Varshavsky's belated admission that he had no right to enforce the loans, contained the alternate ground for relief that Leontiev was not personally responsible to any creditor for the loans, and Leontiev's counsel continued to assert this claim, though in vain, at oral argument on the motion.
A plaintiff in a subsequent litigation may face claim preclusion if he "ha[s] a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation" (D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990]). For example, a union member may be bound by a declaratory judgment against his union in a prior action (see Weisz v Levitt, 59 AD2d 1002 [3d Dept 1977]). Similarly, a judgment against a liability insurer can have binding effect against its insured in a subsequent action (see Hinchey v Sellers, 7 NY2d 287 [1959]). Here, Avilon and Avagumyan's rights derive from their status as parties to the loan agreements in question; they are not conditioned or derivative of Varshavsky's nonexistent rights under the same documents. Where a party in an earlier action lacks standing to bring a claim, dismissal will not preclude a subsequent action where the party does have standing, even where both cases arise from the same nucleus of operative facts (see Pullman Group v Prudential Ins. Co. of Am., 297 AD2d 578 [1st Dept 2002], lv dismissed 99 NY2d 610 [2003]; Tak Shing David Tong v Hang Seng Bank, 210 AD2d 99 [1st Dept 1994]).
Defendants' second theory of preclusion is that plaintiffs herein should have inserted [*6]themselves into the federal litigation via intervention or assignment. Plaintiffs' failure to do so, defendants argue, precludes the prosecution of this action. Defendants do not cite any apposite case law for the proposition.
It is not clear that plaintiffs herein could have been made parties (presumably parties defendant) in the federal litigation without running athwart the requirements of diversity jurisdiction [FN3]. Defendants do not argue on this appeal that joinder was viable. As for intervention, there is conflicting authority as to whether plaintiffs could have intervened in the federal action without destroying diversity jurisdiction (compare e.g. Price v Wolford, 608 F3d 698, 703 [10th Cir 2010] with Merrill Lynch & Co. Inc. v Allegheny Energy Supply Co. Inc., 500 F3d 171, 177, 179-180 [2d Cir 2007]). The second option argued by defendants on this appeal, assignment of plaintiffs' claims to Varshavsky, was mentioned by Judge Rakoff and so might have had greater chance of success. However, there are colorable arguments that assignment would have constituted collusion sufficient to run afoul of 28 USC § 1359, which divests a federal district court of jurisdiction in a civil action where assignment is used "improperly or collusively" to invoke the jurisdiction of the court. It is worth noting that plaintiffs have sued a number of parties in the instant action, not just Leontiev. It is unclear whether counsel discussed with Judge Rakoff the potential roster of (nondiverse) parties that might populate the federal action in the wake of intervention or assignment. Given the strict requirements of diversity jurisdiction, and facing potential motion practice in federal court concerning same, plaintiffs could rationally choose to bring their claims in state court.
Whether or not it was possible to insert plaintiffs into the federal lawsuit without destroying diversity, the fundamental question is why should plaintiffs be compelled to do so upon penalty of preclusion? "It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process" (Taylor v Sturgell, 553 US 880, 884 [2008] [internal quotation marks omitted]). There are narrow exceptions to this rule (id.; Green v Santa Fe Indus., 70 NY2d 244 [1987]). However, the exception invoked by defendants  Varshavsky's privity with plaintiffs  does not support preclusion for the reasons discussed above. In the absence of such an exception, "a party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined" (Martin v Wilks, 490 US 755, 763 [1989]).
Two related purposes of claim preclusion are to ensure finality of decisions and to avoid inconsistent adjudications (Weinstein-Korn-Miller, NY Civ Prac, ¶ 5011.08 [2d ed 2004]; Matter [*7]of Applied Card Sys., Inc., 11 NY3d at 124. Neither of these purposes is served by precluding plaintiffs' claims herein. So far, there has been no adjudication of anything but that Leontiev owes no debt or obligation to Alexander Varshavsky in the latter's personal capacity. Whatever the resolution of the instant case, it will not be inconsistent with the outcome of the federal action. There has been no final adjudication concerning defendants' alleged liability for the loans at issue. Certainly Judge Rakoff did not understand the resolution of the federal action to bar all future claims against Leontiev arising from the loans. The declaration in that action, he stated, "stymies any efforts by Varshavsky to collect on the loans in his own name, and makes plain that any further debt collection efforts must be in a purely representative capacity."
The Court of Appeals has cautioned that "[i]n properly seeking to deny a litigant two days in court, courts must be careful not to deprive him of one" (Matter of Reilly v Reed, 45 NY2d 24, 28 [1978] [internal quotation marks omitted]). Such a deprivation is the effect of the decision below.[FN4]
Because it granted the moving defendants' motions on claim preclusion grounds, Supreme Court did not reach the parties' arguments concerning the legal insufficiency of plaintiffs' claims. The proposed second amended complaint restates plaintiffs' claims for fraudulent conveyance and unjust enrichment, and adds other causes of action that appear to arise under the law of the United Kingdom. As the motion to amend has not been considered by Supreme Court and as the proposed second amended complaint raises additional causes of action which have not been argued below, we remand to Supreme Court for consideration of the motion to amend. Finally, in a brief passage at the end of its decision, Supreme Court found that it lacked in personam jurisdiction over Wonderworks "and undoubtedly also lacks personal jurisdiction over any of the defendants other than, perhaps, Leontiev." We find that this conclusion is premature. Plaintiffs have alleged sufficient facts that might give rise to alter ego jurisdiction over Wonderworks. If Supreme Court were to find that plaintiffs have one or more viable claims that implicate Wonderworks, then plaintiffs have brought forth sufficient facts to justify jurisdictional discovery concerning Wonderworks [FN5]. Plaintiffs have cited evidence tending to show that Leontiev completely dominated Wonderworks and that he misused the corporate form to advance his scheme to gain control over the loan proceeds and place them beyond the reach of the plaintiff creditors. Where there is such a relationship, a court may have jurisdiction over the dominated corporation if it has jurisdiction over the principal (New Media Holding Co. LLC v Kagalovsky, 97 AD3d 463 [1st Dept 2012]). Because Leontiev has not disputed that New York has general jurisdiction over him under CPLR 301, it may be that Wonderworks is within the jurisdiction of the court as well. Additionally, plaintiffs have averred that Wonderworks' New York-based conveyances confer jurisdiction under CPLR 302.
Where a defendant moves to dismiss for lack of jurisdiction under CPLR 3211(a)(8), a plaintiff need not present definitive proof of personal jurisdiction, but only make a "sufficient start" in demonstrating such jurisdiction by reference to pleadings, affidavits, and other suitable documentation (American BankNote Corp. v Daniele, 45 AD3d 338, 340 [1st Dept 2007] [internal quotation marks omitted]). Plaintiffs have done so here. If Supreme Court finds that plaintiffs have one or more viable claims that implicate Wonderworks, then jurisdictional [*8]discovery is warranted with respect to Wonderworks.
Accordingly, the order of the Supreme Court, New York County (Barry R. Ostrager, J.), entered October 5, 2017, which dismissed the action in its entirety with prejudice, should be reversed, on the law, without costs, and the matter remanded for further proceedings in accordance with this opinion.
All concur.
Order Supreme Court, New York County (Barry R. Ostrager, J.), entered October 5, 2017, reversed, on the law, without costs, and the matter remanded for further proceedings in accordance with this opinion.
Opinion by Moulton, J. All concur.
Sweeny, J.P., Webber, Gesmer, Singh, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 3, 2019
CLERK



Footnotes

Footnote 1:In their proposed second amended complaint herein plaintiffs have alleged, upon information and belief, that Leontiev subsequently acquired Cypriot citizenship.

Footnote 2:For their part Varshavsky's lawyers assert that they made a similar offer to Leontiev's counsel early in the federal litigation.

Footnote 3:28 USC § 1332 permits federal courts to exercise jurisdiction in a civil action where the amount in controversy exceeds $75,000 (exclusive of interest and costs) and which is between, in relevant part, "citizens of a State and citizens or subjects of a foreign state," or "citizens of different States and in which citizens or subjects of a foreign state are additional parties" (28 USC § 1332[a][2], [3]). The Second Circuit has explained that "diversity is lacking within the meaning of these sections where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens" (Universal Licensing Corp. v Paola del Lungo S.p.A., 293 F3d 579, 581 [2d Cir 2002]; see also Corporation Venezolana de Fomento v Vintero Sales Corp., 629 F2d 786, 790 [2d Cir 1980], cert denied 449 US 1080 [1981]).

Footnote 4:Leonid Leontiev, Legion Trust, and Southpac International, Inc. did not move to dismiss,, and the complaint should not have been dismissed against them on that ground as well.

Footnote 5:Whether such jurisdictional discovery is warranted against other defendants is not before us on this appeal.