[No. D056892. Fourth Dist., Div. One. Mar. 30, 2011.]

DANIEL BRANSON, Plaintiff and Appellant, v.
SHARP HEALTHCARE, INC., et al., Defendants;
STATE DEPARTMENT OF HEALTH CARE SERVICES, Claimant and
Respondent.

## COUNSEL

Steven B. Stevens; Law Offices of Brian C. Gonzalez, Brian C. Gonzalez; and James D. Vogt for Plaintiff and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Douglas M. Press, Assistant Attorney General, Richard T. Waldow and Jesse A. Cardenas, Deputy Attorneys General, for Claimant and Respondent.

## OPINION

**McCONNELL, P. J.**—The beneficiary of medical services under the California medical assistance program (Medi-Cal) is required to reimburse the State Department of Health Care Services (the Department) for the costs of medical care from a recovery obtained in a tort action against a third party liable for the beneficiary's injuries. The Department's claim, however, "is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary." (Welf. & Inst. Code,[1] § 14124.76, subd. (a); see *Arkansas Dept. of Health and Human Servs. v. Ahlborn* (2006) 547 U.S. 268, 278 [164 L.Ed.2d

---

[1] Future undesignated statutory references are also to the Welfare and Institutions Code.

459, 126 S.Ct. 1752] (*Ahlborn*).) When a settlement of third party litigation is unallocated between categories of damages, such as medical costs, lost earnings, and pain and suffering, the trial court may determine the appropriate Medi-Cal lien amount by comparing the percentage of the settlement to the beneficiary's total damages, and applying that percentage to the past medical costs for which the Department seeks reimbursement. (*Lopez v. DaimlerChrysler Corp.* (2009) 179 Cal.App.4th 1373, 1378 [102 Cal.Rptr.3d 285] (*Lopez*).)

The beneficiary here, Daniel Branson, obtained an unallocated partial settlement of his medical malpractice action, after which the Department demanded partial reimbursement for medical costs to date, and he complied. When Branson received an additional unallocated settlement, which fully resolved his case, the Department sought additional reimbursement. He brought a motion under section 14124.76, subdivision (a) for the court's determination of the appropriate amount of the total lien. Branson argued that given his overall damages, he had overpaid the Department by $250,729. The court agreed with his calculation, and ordered that he is not required to pay the Department any additional amount. The court, however, found it lacked authority to order the Department to refund the overpayment.

On appeal, Branson challenges the court's jurisdictional finding. We conclude that under the plain language of subdivision (c) of section 14124.76, the court has jurisdiction to order the Department to refund Branson's overpayment. Section 14124.76, subdivision (c) states that in a proceeding to establish the appropriate amount of a Medi-Cal lien, the "court shall issue its findings, decision, *or order*, which shall be considered the *final determination of the parties' rights and obligations with respect to the director's lien* . . . ." (Italics added.) We also hold that Branson's payment of the Department's initial demand for reimbursement does not constitute a negotiated settlement that constitutes any type of waiver or forfeiture of his right to challenge the total lien amount at the conclusion of his malpractice action.

FACTUAL AND PROCEDURAL BACKGROUND

In 2004 Daniel Branson, then 42 years old, was the victim of medical malpractice, the failure to diagnose a spinal abscess, and as a result he suffers from quadriplegia and a plethora of attendant physical and psychological problems. He requires around-the-clock nursing care and he faces additional surgeries and many other expensive medical procedures.

Branson brought a medical malpractice action against a hospital, an emergency medical group, and individual physicians. The Department filed a notice of lien on any recovery for reimbursement of medical expenses Medi-Cal had covered.

Sometime in 2007, Branson settled his claims against two of the defendants for a total of $2 million. The settlement was not allocated among categories of damages. In an August 8, 2007 letter to Branson's attorney, the Department stated it had paid $611,133.94 in medical costs for him and it would accept $440,478.64 in reimbursement based on the $2 million settlement, attorney fees of zero and litigation costs of $58,487.41. The letter does not reveal how the Department calculated the reimbursement amount. Further, there is no suggestion the Department's demand took into consideration Branson's total damages. The letter also states: "Due to the possibility of additional settlements, this reimbursement amount will only be considered as partial satisfaction of the Medi-Cal lien. Upon each settlement you are required . . . to notify us so that we can furnish you with an updated lien amount. The Department retains all statutory lien rights arising from Medi-Cal paid services with regard to any other settlement, award or judgment." In October 2007 Branson paid the full amount the Department requested.

In November 2008 Branson settled his claims against the remaining defendants for a total of $4,804,269. Again, the settlement was not allocated among categories of damages. In a November 19 letter to Branson's attorney, the Department stated Medi-Cal had paid an additional $513,979.71 for his medical costs. It sought reimbursement of an additional $370,390.66 to satisfy the Medi-Cal lien. Again, the letter did not explain how it calculated the reimbursement amount.

Because the total settlements Branson received amounted to only a fraction of his overall damages, he believed the Department was not entitled to further reimbursement, and in fact he had already overpaid the reasonable amount of the Medi-Cal lien. Thus, in November 2009 he brought a motion under section 14124.76 to have the court determine the reasonable amount of the Medi-Cal lien, to strike the Department's demand for further reimbursement, and to order the Department to refund the amount of his overpayment.

Branson argued that under *Ahlborn, supra,* 547 U.S. 268, a reasonable method of determining the appropriate amount of the Medi-Cal lien was to

compare the percentage of his total settlements to his overall damages, and apply the same percentage to the Department's total expenditures. Branson adduced evidence he had a life expectancy of 20.8 years and his overall damages, including the statutory limit of $250,000 for pain and suffering, were $29,047,398.[2] His total settlements were $6,804,269, thus he recovered only 23.4 percent of his damages. The Department's total expenditures for medical costs were $1,125,113, and 23.4 percent of that figure is $263,276. Further, under section 14124.72, subdivision (d), the lien is reduced by $65,819, which is 25 percent of Branson's attorney fees, and by $7,708 for the Department's share of litigation costs, for a lien amount of $189,749. Thus, by paying the Department's initial demand for reimbursement of $440,478, he overpaid his debt by $250,729.

The Department filed no written opposition and did not appear at the hearing.

On January 13, 2010, the court issued an order adopting Branson's calculation of the appropriate amount of the Medi-Cal lien, and determining he had overpaid the Department by $250,729. The court ordered that Branson owed the Department nothing further, but it found it lacked jurisdiction under section 14124.76 to order the Department to refund the overpayment.

DISCUSSION

I

*Background Law*

A brief discussion of federal Medicaid law and state Medi-Cal law is necessary to put the statutory issue here in context. In 1965 Congress established Medicaid by enacting title XIX of the Social Security Act. (42 U.S.C. §§ 1396–1396v; *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 809 [135 Cal.Rptr.2d 1, 69 P.3d 927].) Under the Medicaid program, the federal government provides financial assistance to states that voluntarily participate to assist them in providing health care to needy persons. If a state agrees to establish a Medicaid plan, the federal government agrees to pay a specific percentage of expenses. Participating states must comply with federal

---

[2] Branson's motion states that "to simplify the calculations of overall damages, [he] has excluded a claim for future loss of earnings."

Medicaid law. One of the laws is that the state Medicaid agency must seek reimbursement for medical expenses from liable third parties. (*Olszewski*, at p. 811.)

█ California participates in the Medicaid program through Medi-Cal (§ 14000 et seq.). In implementing Medi-Cal, our Legislature has authorized the Department to assert and collect on a lien for reimbursement of medical costs from the recovery in an action by the beneficiary against a third party tortfeasor. (§§ 14124.74, subd. (a), 14124.76, subd. (a).) The amount of a Medi-Cal lien is reduced by 25 percent of the beneficiary's attorney fees, and by "that portion of the cost of litigation expenses determined by multiplying by the ratio of the full amount of the reasonable value of benefits so provided to the full amount of the judgment, award, or settlement." (§ 14124.72, subd. (d).)

The Legislature originally allowed the Department to claim "the entire amount of any settlement of the injured beneficiary's action or claim," with the caveat that "in no event shall the . . . claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary." (Former § 14124.78, as added by Stats. 1976, ch. 621, § 2, pp. 1476–1477.) In *Ahlborn, supra*, 547 U.S. 268, however, the United States Supreme Court clarified the law with respect to the portion of a settlement the state may seek under federal Medicaid law. In *Ahlborn*, the court disapproved of an Arkansas statute that authorized a lien for the full amount of a beneficiary's medical costs, even if the lien exceeded the entire recovery or the recovery was only partially allocated to past medical costs. (*Id.* at p. 278.) The court held the statute "finds no support in the federal third-party liability provisions, and in fact squarely conflicts with the anti-lien provision of the federal Medicaid laws" (*id.* at p. 280), which "prohibits States . . . from placing liens against, or seeking recovery of benefits paid from, a Medicaid recipient" (*id.* at p. 283). The court explained that federal law "focuses on recovery of payments for medical care." (*Id.* at p. 280.) *Ahlborn* establishes no particular formula. In *Ahlborn*, the tortfeasor settled for one-sixth of the beneficiary's overall damages, and the state stipulated that approximately one-sixth of the settlement would be considered compensation for medical expenses. The court held "the relevant 'liability' extends no further than that amount." (*Id.* at p. 281.)

Effective August 24, 2007, the Legislature amended section 14124.76 to comport with *Ahlborn*.[3] A trio of California opinions addresses the trial

---

[3] Section 14124.76 now reads: "(a) No settlement, judgment, or award in any action or claim by a beneficiary to recover damages for injuries, where the director [of the Department] has an interest, shall be deemed final or satisfied without first giving the director notice and a reasonable opportunity to perfect and to satisfy the director's lien. *Recovery of the director's*

court's implementation of *Ahlborn*. (*Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744 [87 Cal.Rptr.3d 174]; *Lima v. Vouis* (2009) 174 Cal.App.4th 242 [94 Cal.Rptr.3d 183]; *Lopez, supra,* 179 Cal.App.4th 1373.) In *Lopez,* for instance, the court approved of the trial court's application of the *Ahlborn* formula, particularly because the Department "failed to provide any evidence refuting [his] evidence of damages or an alternative method for determining the past medicals portion." (*Lopez,* at p. 1378.) In the instant case, the court likewise approved the *Ahlborn* formula, which Branson advanced, when the Department chose not to oppose his motion.

II

*Section 14124.76, Subdivision (c)*

Branson contends the court erred by finding it lacked jurisdiction under section 14124.76, subdivision (c) to order the Department to refund his $250,279 overpayment. We agree with him.

■ The interpretation of a statute is a legal matter we review independently. In determining legislative intent, " 'we look first to the words themselves.' " (*Department of Fish & Game v. Anderson-Cottonwood Irrigation Dist.* (1992) 8 Cal.App.4th 1554, 1562 [11 Cal.Rptr.2d 222], quoting *People v. Woodhead* (1987) 43 Cal.3d 1002, 1007–1008 [239 Cal.Rptr. 656, 741 P.2d 154].) "[W]e read the words of the statute according to their 'usual, ordinary, and common sense meaning' consistent with the statute's apparent purpose . . . ." (*Al-Sal Oil Co. v. State Bd. of Equalization* (1991) 232 Cal.App.3d 969, 976 [283 Cal.Rptr. 843].) " 'When the [statutory] language is clear and unambiguous, there is no need for construction. . . .' " (*Department of Fish & Game,* at p. 1562.)

---

*lien from an injured beneficiary's action or claim is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary. . . .* Either the director or the beneficiary may seek resolution of the dispute by filing a motion, which shall be subject to regular law and motion procedures. In determining what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary and as to what the appropriate reimbursement amount to the director should be, the court shall be guided by the United States Supreme Court decision in . . . *Ahlborn*[, *supra,*] 547 U.S. 268 and other relevant statutory and case law." (Italics added.)

Section 14124.78 now reads: "Notwithstanding any other provision of law, in no event shall the director recover more than the beneficiary recovers after deducting, from the settlement, judgment, or award, attorney's fees and litigation costs paid for by the beneficiary." Section 14124.785, added at the same time, provides: "The director's recovery is limited to the amount derived from applying Section 14124.72, 14124.76, or 14124.78, whichever is less."

We expect that in most instances the refund issue does not arise, because the third party litigation is fully resolved at one time, without the beneficiary having made one or more earlier reimbursements to the Department. Here, however, Branson's malpractice action settled in two stages, with the Department demanding a preliminary payment on its lien before the matter was fully resolved. In the end, the court determined he substantially overpaid. Under these circumstances, we disagree that the court's hands are tied.

■ Rather, the plain language of section 14124.76, subdivision (c) gives the court jurisdiction to order the Department to make a refund. It provides that on a motion to determine the appropriate reimbursement amount of a lien, the "court shall issue its findings, decision, *or order*, which shall be considered the *final determination of the parties' rights and obligations with respect to the director's lien . . . .*" (§ 14124.76, subd. (c), italics added.) Thus, the court may issue an order to implement its final determination as to the appropriate amount of the lien. Subdivision (b) of section 14124.76 supports this interpretation. It provides: "If the beneficiary has filed a third-party action or claim, the court where the action or claim was filed *shall have jurisdiction over a dispute* between the director and the beneficiary regarding the amount of a lien asserted pursuant to this section that is based upon an allocation of damages contained in a settlement or compromise of the third-party action or claim." (§ 14124.76, subd. (b), italics added.) To settle such a dispute, the court must have the power to enforce its finding as to the appropriate reimbursement amount.[4]

■ The Department offers no cogent argument as to why subdivision (c) of section 14124.76 does not authorize the court to order a refund. The Department merely asserts section 14124.76 only allows the court to determine the "appropriate reimbursement amount" when the parties cannot agree, citing subdivision (a) of section 14124.76. That stance is unpersuasive. Nothing in subdivision (a) of the statute indicates any such restriction of the court's power to issue orders under subdivision (c). Had the Legislature intended to restrict the court's jurisdiction to making findings and determinations, we presume it would not have included the term "order" in subdivision (c). We must give meaning to every word, when possible, and avoid an

---

[4] The court also has the inherent authority to order compliance with its rulings. " 'The power to enforce their decrees is necessarily incident to the jurisdiction of courts. Without such power, a decree would, in many cases, be useless. "All courts have this power, and must necessarily have it; otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it, they would be utterly powerless." ' " (*Security T. & S. Bk. v. S. P. R. R. Co.* (1935) 6 Cal.App.2d 585, 589 [45 P.2d 268]; see Code Civ. Proc., § 128, subd. (a)(4) [codification of inherent power].)

interpretation that makes any word surplusage. (*Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 341 [110 Cal.Rptr.3d 628, 232 P.3d 625].) Contrary to the Department's assertion, section 14124.76, subdivision (c) does not suggest the court's power to issue an order is restricted to making an order stating the reasonable lien amount. Surely, subdivision (c) authorizes the court to order a beneficiary to reimburse the Department for reasonable value of a Medi-Cal lien, and the statute shows no reason the authority does not apply equally to the refund of an overpayment under circumstances such as those here. Under the Department's view, section 14124.76 would be ineffective in settling disputes.[5]

██ The Department also submits that interpreting section 14124.76, subdivision (c) in the manner Branson urges would lead to absurd results, in that it "would cause harmful consequences not only for the State of California, but more importantly, for the needy who depend on the Medi-Cal program to provide them with medical care they could not otherwise afford." "[J]udicial construction of unambiguous statutes is appropriate only when literal interpretation would yield absurd results." (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 583 [80 Cal.Rptr.3d 83, 187 P.3d 934].) Literal interpretation of the statute does not lead to absurd results, because the Legislature has no legitimate interest in the Department's retention of beneficiary overpayments to which it is not entitled. We do not attribute any such intent to the Legislature, and we cannot countenance subsidizing the Medi-Cal program in this manner, at the expense of injured beneficiaries. As Branson notes, the "Department's position here, stripped to its core, is 'too bad, we have it and we're not paying it back.' " In addition to defying notions of fairness, the Department's position thwarts the legislative intent of recovering reimbursement funds in an expedited and cooperative manner to subsidize the Medi-Cal program. If beneficiaries are foreclosed from obtaining refunds for overpayments, they will be unlikely to voluntarily make reimbursements based on settlements with fewer than all the defendants, pending the final resolution of third party lawsuits. We are not going to ignore the plain language of subdivision (c) of section 14124.76 in favor of the interpretation the Department urges.

██ Further, the fact that a beneficiary may obtain a "tentative determination" under section 14124.76, subdivision (c) under certain circumstances is not helpful to the Department. Subdivision (c) provides the court's decision on a motion to set the appropriate reimbursement amount is final "unless the *settlement is contingent on an acceptable allocation of the settlement proceeds*, in which case, the court's findings, decision, or order shall be

---

[5] Had the court determined Branson owed further reimbursement to the Department, we doubt it would argue section 14124.76, subdivision (c) deprives the court of jurisdiction to order his compliance.

considered a tentative determination. If the beneficiary does not serve notice of a rejection of the tentative determination, *which shall be based solely upon a rejection of the contingent settlement*, within 30 days of the notice of entry of the court's tentative determination, subject to further consideration by the court pursuant to subdivision (d), the tentative determination shall become final. . . ." (Italics added.) The language is inapplicable, as the record does not suggest Branson's settlement with two defendants for a total of $2 million—on which the Department's initial reimbursement demand was based—had any such contingency. Contrary to the Department's assertion, the language does not mean the court will issue a tentative determination "at any time during the litigation" in circumstances unrelated to contingent settlements.

■ We also reject the proposition that Branson's payment of $440,478.64 to the Department was the result of a negotiated settlement that constitutes a waiver of his right to dispute the amount under section 14124.76 and *Ahlborn*. The Department points to no evidence of any negotiation. The record merely shows the Department sent Branson an initial reimbursement demand, with the understanding there would be an "updated lien amount" when his litigation was finally resolved. Given the parties' understanding of the fluid nature of the matter, his payment does not constitute an agreement it was not subject to later adjustment. We reject the Department's view that the fluidity pertained only if Branson owed it *additional* reimbursement. Waiver is the intentional relinquishment of a known right (*People v. Saunders* (1993) 5 Cal.4th 580, 590 [20 Cal.Rptr.2d 638, 853 P.2d 1093]), and the record does not indicate waiver.[6]

■ We hold the trial court has jurisdiction under section 14124.76, subdivision (c) to order the Department to refund Branson's overpayment of the Medi-Cal lien. We also hold his payment of the Department's initial demand for reimbursement does not constitute any type of waiver or forfeiture of his right to challenge the amount after his malpractice action was fully resolved, as exceeding reimbursable medical costs in violation of *Ahlborn, supra*, 547 U.S. 268.

---

[6] Because we conclude there was no settlement, we are not required to address the Department's contentions the court had no reason to order a refund because the so-called settlement was reasonable in that the court is not required to apply the *Ahlborn* formula, or that a refund order would be an impermissible vacatur of a final settlement. The Department's reliance on *Espericueta v. Shewry* (2008) 164 Cal.App.4th 615 [79 Cal.Rptr.3d 517], and *McMillian v. Stroud* (2008) 166 Cal.App.4th 692 [83 Cal.Rptr.3d 261], is misplaced because those opinions "involve attempts to modify final orders approving settlements [(minors' compromises)]" based on *Ahlborn*. (*Bolanos v. Superior Court, supra*, 169 Cal.App.4th at p. 758.)

## DISPOSITION

The order is reversed. We direct the court on remand to enter an order directing the Department to issue a refund to Branson in the amount of $250,729 for his overpayment of the Medi-Cal lien. We affirm the order in all other respects. Branson is entitled to costs on appeal.

Huffman, J., and Irion, J., concurred.